PHOENIX COTTON OIL COMPANY *v.* PETTUS & BUFORD.

Opinion delivered April 22, 1918.

1.   BAILMENTS—COTTON DELIVERED TO A GINNER.—Where cotton is delivered by the owner to a ginner to be ginned, and the latter issues a receipt therefor, and the cotton can not be gotten by the owner without presenting this receipt, *held* the relationship of bailor and bailee for hire is established between the parties.

2.   BAILMENTS—LOSS OF PROPERTY—BURDEN OF PROOF.—A bailee for hire in exclusive possession of the property must explain its loss before it devolves upon the bailor to show that it was lost through the bailee's negligence.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*G. M. Gibson* and *H. L. Ponder,* for appellants.

1.   Appellees are not entitled to recover under the pleadings and proof. Appellants were not bailees for hire, but only gratuitous bailees and held to only ordinary care.   68 Ark. 284; 67 *Id.* 284.

2.   The burden was on appellees to show negligence and loss.   68 Ark. 284; 12 A. & E. Enc. 54; 24 S. W. 1053; 31 Ark. 286; 40 *Id.* 375; 44 *Id.* 208; 52 *Id.* 26; 63 *Id.* 344; 101 *Id.* 75, 84.

3. The instructions asked by appellant state the law.   39 Ark. 375; 52 *Id.* 26; 90 *Id.* 256; 39 Am. St. 172.

*Mann, Bussey & Mann,* for appellees.

The contract establishes the relation of bailor and bailee for hire, and the burden was on appellants to show what became of the cotton before appellees are called on to prove loss by negligence.   The bailee must explain the loss.   101 Ark. 75; 28 L. R. A. 716; 6 C. J. 1111, 1151, 1156, 1158.   There was no issue of fact for a jury and a verdict was properly directed.

HUMPHREYS, J.   On October 2, 1916, Pettus & Buford and Sarah Hunt delivered a wagon load of seed cotton to the Phoenix Cotton Oil Company, at Widener, Arkansas, to be ginned.   Same was ginned and the bale weighed 389 pounds.   The bale of cotton was left at the gin and the Phoenix Cotton Oil Company issued them the following receipt:

Widener, Ark., Oct. 2, 1916.
*Bale Cotton Claim Ticket.*

"Bale No. 763
Mark ............................
Gin Weight 389
Not guaranteed.
Ginning due $...........

On return of this ticket properly endorsed we will deliver one bale cotton ginned for P. & B. & S. Hunt.   All cotton left at gin is at owner's risk of loss or damage by fire or otherwise.
Phoenix Cotton Oil Co.,
J. L. Terry, Manager."

On the 4th day of October, 1916, Elias Chandler procured a receipt for a bale of cotton weighing 530 pounds, which he had previously left at the gin.   The receipt was in the same form as the one above mentioned.

Each receipt was delivered to Pettus & Buford, who presented the receipts and demanded the cotton on the 4th day of October, 1916.   The cotton could not be found and, for that reason, was not delivered to them.

A suit was instituted by E. A. Rolfe and R. L. Pettus, trustees, under the will of Geo. B. Pettus, deceased, T. A. Buford and E. A. Rolfe, under the firm name of Pettus & Buford, Sarah Hunt and Elias Chandler against the Phoenix Cotton Oil Company for the value of said cotton.

On the 8th day of October, 1915, F. W. DeRossitt delivered one load of seed cotton to the Phoenix Cotton Oil Company to be ginned, and on the 13th day of October thereafter delivered another load to it to be ginned. The cotton was baled and left at the gin. The first bale weighed 546 pounds and the second bale 605 pounds. Separate receipts were issued, the first dated October 8, 1915, and the second dated October 13, 1915, to F. W. DeRossitt. The receipts were in the same form as the receipt above set out. F. W. DeRossitt sold the cotton and transferred the receipts to Fussell-Graham-Alderson Company. The receipts were presented to the Phoenix Cotton Oil Company by Fussell-Graham-Alderson Company, but the cotton could not be found and was not delivered to it. Fussell-Graham-Alderson Company and F. W. DeRossitt then instituted suit against the Phoenix Cotton Oil Company for the value of the cotton in the St. Francis Circuit Court. The Phoenix Cotton Oil Company answered in each case, denying that it received the cotton or that it issued the receipts therefor; and, in addition, alleged that they were ginners of cotton and not warehousemen; and that they did not insure the delivery of the cotton to any one, and that it was not responsible in any way for the cotton after it was ginned and rolled onto its yards.

These suits were consolidated for purposes of trial and were submitted and tried by a jury upon the evidence and peremptory instruction of the court. The jury returned a verdict in favor of Pettus & Buford for $210.14 and for Fussell-Graham-Alderson Company in the sum of $167.60. Judgments were rendered accord-

ingly, from which an appeal has been prosecuted to this court.

(1)   The written contract in this case established the relationship of bailor and bailee for hire between the parties.   Under the contract, appellant had the exclusive possession of the cotton.   The appellee could not acquire possession thereof without presenting the receipt.   The receipt was presented and the cotton was not delivered because not found on the yard.   The contract contained a clause to the effect that the cotton was held by appellant at the owner's risk of loss or damage by fire or otherwise.   The evidence does not show what became of the cotton.

Appellant insists that it devolved upon the owners to show that the property was lost or destroyed through its negligence before they could recover the value of the cotton.

The appellees insist that the burden rested upon appellant to explain what became of the cotton which it received, before they can be called upon to prove that it was lost or destroyed through some act of negligence on the part of appellant.

(2)   This court is committed to the rule that a bailee for hire in exclusive possession of the property must explain the loss thereof before it devolves upon the bailor to show that it was lost through the bailee's negligence. In adopting the rule, this court said:   "It is a rule which is founded upon necessity, and grows out of the fact that the bailee, having exclusive possession of the property, has also the exclusive means of showing what became of it.   * * *   Having peculiar, if not the exclusive, means of the knowledge of the facts growing out of his exclusive possession and custody of the property, (he) is best able to prove them."   *Bertig* v. *Norman*, 101 Ark. 75. See also *Prince* v. *Alabama State Fair*, 28 L. R. A. 716; *Chaflin* v. *Meyer*, 75 N. Y. 260.

Appellant relies upon *James* v. *Orrell*, 68 Ark. 284, as supporting its contention.   That case was referred to

in *Bertig* v. *Norman, supra,* in support of the general rule that "A bailee is only liable for negligence; and such negligence must be proved by the party seeking to make him liable therefor." In that case, the sole issue presented by the pleadings and evidence was one of negligence. The issue of negligence was not presented by the pleadings and evidence in the instant case. This is a suit in assumpsit founded on the breach of a written contract of bailment where the bailee had exclusive possession of the property. This suit is controlled by the rule announced in the case of *Bertig* v. *Norman, supra,* to the effect that a bailee for hire, having exclusive possession of the property, must explain its loss before the bailor is required to prove the loss occurred through the negligence of the bailee.

No error appearing in the record, the judgment is affirmed.