ANDREWS *v.* SOUTHWESTERN HOTEL COMPANY.

Opinion delivered December 14, 1931.

*Joseph R. Brown* and *James B. McDonough*, for appellant.

*Daily & Woods,* for appellee.

Butler, J. The Goldman Hotel is one of the leading hotels in Fort Smith, Arkansas. It has no garage for the accommodation of automobiles of its guests, but usually notifies a nearby garage of the arrival of such cars which are desired to be stored, such notice being given by an electric bell connected with the garage from the clerk's office and operated by a push button. No one had access to this push button except the clerk on duty and the telephone operator at the hotel. When a guest arrived with a car which was desired to be stored, it was the custom to notify the garage by means of the push button, and it would send one of its employees to the hotel for the car. None of the employees of the hotel had any authority to transport automobiles of guests to the garage, and the bell boys (bell hops) were expressly forbidden from doing this, and it was ground for discharge for any one of them to violate this rule.

Judge Thomas G. Andrews, appellant here, is a resident of Oklahoma City, Oklahoma. On June 30, 1930, he left that city in his automobile, accompanied by his wife and mother, on a journey to one of the Carolinas, and on that trip reached Fort Smith at about 10 o'clock at night, and drove to the front door of the Goldman Hotel on its driveway and there stopped. He and his companions

alighted and went into the hotel leaving the key in the transmission (ignition). Judge Andrews went to the desk of the hotel where he registered himself and his companions as guests. One of the bell boys took the car, ostensibly to carry it to the garage of Yantis & Harper just around the corner from the hotel. The appellant went to his room and was notified about eleven o'clock that night that the automobile had been found practically destroyed at a point in the city about a mile from the hotel. No one was in the car when it was found, but there was a coat in it belonging to the bell boy. This bell boy has never been seen in Fort Smith since that time. Judge Andrews carried insurance upon his automobile covering such instances as this with the Fidelity Union Casualty Company. On being notified on the following day, the insurance company authorized Judge Andrews to purchase a new car, which he did, and assigned in part his claim for damage against the hotel company to the insurance company.

Suit was brought for damage to the car, and from an adverse verdict the plaintiffs have appealed.

There is no question as to the amount of damage, the only question being that of liability. After the verdict was returned in the court below, the plaintiffs moved the court for a judgment in their favor for the amount of the damage, notwithstanding the verdict, and, on the motion being overruled, a motion for a new trial was duly filed alleging, among other things, that upon the undisputed evidence the plaintiffs are entitled to a verdict in their favor.

It is insisted here that the court should have rendered judgment for the plaintiffs, notwithstanding the verdict in the court below, and that this court ought now to reverse the judgment of the trial court and render a verdict here for the amount of plaintiff's claim. They base their contention on the theory that the car at the time it was taken by the bell boy was *infra hospitium*, and that the rule announced in 2 Parsons on Contracts, at page 158, approved by this court in the case of *Pettit* v.

*Thomas,* 103 Ark. 593, 148 S. W. 501, 12 L. R. A. (N. S.) 122, Ann. Cas. 1914B, 726, is applicable to the instant case and establishes liability on the undisputed facts. That rule, referring to an innkeeper's duty to his guest, is as follows: "He is an insurer of the safety of whatever baggage or other things he receives into his inn for his guest, whether in fact negligent in their keeping or not, except against the two overwhelming forces termed the acts of God or of the public enemy. For example, if they are stolen or burned without the fault of either the guest or the landlord, the latter must be liable for them."

This rule was abolished by act No. 217 of the Acts of the General Assembly of 1913, now found in Crawford & Moses' Digest in §§ 5564-5573, both inclusive. In *Turner* v. *Weitzel,* 136 Ark. 503, 207 S. W. 39, this court, referring to the case of *Pettit* v. *Thomas, supra,* said: "That case was decided in the year 1912, but since that time the law on that subject has undergone a material change by the enactment of the act of March 29, 1913. (Act No. 217, *supra.*) * * * It makes the keeper of a hotel liable as a bailee for hire and abrogates the common-law liability as insurer. * * * The law requires ordinary care and diligence on the part of the bailee and makes him responsible only for ordinary neglect. And this is the extent of his duty and liability, even though he may be so interested in the property as to make him a bailee for hire. In such case the bailee is liable only for negligence; and such negligence must be proved by the party seeking to make him responsible therefor. The mere loss of the property does not ordinarily fix a liability for the loss upon him, but it must be further shown that said loss arose by reason of his negligence." See also *Huckins Hotels* v. *Smith,* 151 Ark. 167, 235 S. W. 787; *New York Hotel Co.* v. *Palmer,* 158 Ark. 598, 251 S. W. 34; *Fant* v. *Arlington Hotel Co.,* 170 Ark. 440, 280 S. W. 20.

It is insisted by the appellants, however, that the statute becomes applicable only when a copy of § 1 of said act is posted within the hotel in the manner prescribed

by that section, and that this compliance on the part of the innkeeper must be affirmatively shown before the benefit of the act may be invoked. That section relates only to the safeguarding of valuables of small bulk, such as money, personal ornaments, negotiable or valuable papers and bullion, to be kept within a safe or in the sleeping room used by guests and has no relation whatever to the safe care of automobiles. The court therefore did not err in its refusal to grant the motion of the appellants in the respects mentioned.

Besides, liability is not sought to be established in this case upon any statutory or common-law duty resting upon the innkeeper. The cause of action declared upon is an express agreement of bailment. Boiled down, the complaint alleges that the plaintiff, Judge Andrews, after registering as the guest of the hotel, made inquiry of the clerk on duty as to whether or not a garage was nearby where his car could be stored in safety. The clerk informed him that there was such a garage, and thereupon the plaintiff asked if some of the employees of the hotel would take charge of the automobile, and the clerk authorized and directed a negro man in the employ of the hotel to take the automobile and place it in the nearby garage. Acting on the invitation of the defendant and its employees, the plaintiff delivered the car to the negro to be taken to the garage, and the defendant, through its servants, officers, clerk and employees, assumed and took upon itself the duty and obligation to store said automobile in a safe garage.

The testimony adduced by the plaintiffs tended to establish these allegations, but this testimony was disputed by that of the clerk who, while admitting that Judge Andrews inquired about a safe garage in which his car might be stored and that he gave him the information requested, and that he did not communicate with the garage, denied that he told Judge Andrews that any one of the negro employees who happened to be bell boys would take the car to the garage. He stated that, after he gave Judge Andrews the information, the latter turned

and walked away from the desk, and that he did not know where the judge went. Judge Andrews testified that, after he was told by the clerk that one of the negro boys would take charge of the car, he turned and walked from the desk and met three of the bell boys about ten feet from the desk in the lobby of the hotel, and that he said, addressing them, "Which one of you boys will take the car," and one said, "I will"; that he then accompanied the boy to the car and the latter got in and drove it away.

It is argued here that, as the conversation between Judge Andrews and the bell boys occurred so near the clerk's desk, the clerk could have overheard the same. There is no positive testimony to show that he did, and he might or might not have done so. This question of fact was submitted to the jury in the following instruction requested by the appellants, embodying their theory of the case: "This is a suit by the plaintiffs against the defendants to recover damages sustained by the plaintiffs because of damage to the automobile of plaintiff, Thomas G. Andrews. If you find from the evidence that the clerk, or the employee acting as clerk at the time said Thomas G. Andrews registered at the Goldman Hotel, authorized said Andrews to turn his automobile over to a bell boy, or employee, of said hotel to drive to a garage, and, pursuant to said authority, Andrews turned said car over to a bell boy or employee, and said employee or bell boy took a ride in said car and damaged same by his negligence, it is your duty to find for plaintiffs." The only other declaration of law requested by appellants was that relating to the measure of damage, which instruction was given by the court.

At the request of the appellee, the court gave instructions (e), G, 4 and 5, to which objection was duly made and exceptions saved, and errors here assigned and argued. These instructions are as follows:

"(e) You are instructed that, under the evidence in this cause, the clerk in charge of the desk of the defendant's hotel had actual authority to cause Judge Andrews'

car to be stored at the Yantis-Harper garage and to call an employee of the Yantis-Harper garage to take charge and drive said automobile to storage, but you are further instructed that the bell boy who drove said car and wrecked the same had neither real nor apparent authority to take charge of said car and drive the same, unless you further find from the evidence that the clerk directed said bell boy to take charge of said car, or that said clerk directed Judge Andrews to turn said car over to the bell boy; so, if you find from the evidence that the clerk directed the bell boy to take charge of said car, or directed Judge Andrews to turn said car over to the bell boy, your verdict will be for the plaintiff. On the other hand, if you find that the clerk did not tell Judge Andrews to turn his car over to the bell boy, and that the clerk gave no instructions to the bell boy with reference to said car, then your verdict *must* be for the defendant.

"G. The burden of proof is upon the plaintiff to make out his case by a preponderance of the evidence.

"4. You are instructed as a matter of law under the evidence in this case that the bell boy had no authority to take the car of the plaintiff and store the same, or to have it done, unless you further find from the evidence that the clerk, Kenneth Newman, authorized or directed the bell boy to take charge of said car, or directed the plaintiff, Andrews, to turn the same over to the bell boy for that purpose. And in this connection you are instructed that, if you find from the evidence in this case that the clerk, Kenneth Newman, did not authorize or direct the bell boy to take charge of said car, or did not authorize or direct the plaintiff, Andrews, to turn his car over to the bell boy, then in that event your verdict will be for the defendant.

"5. You are instructed as a matter of law that the plaintiff, by his mere act of registering at the defendant's hotel, was not justified in turning his car, or the keys thereto, over to a bell boy, or instructing him to store his car in a garage. Before you can find for the plaintiffs in this case, they must show by a preponder-

ance of the evidence that the clerk, Kenneth Newman, either authorized or directed the bell boy to take charge of the plaintiff's car, or that he authorized or directed the plaintiff to have the bell boy do it. Unless the plaintiffs establish one or both of these facts by a preponderance of the evidence, your verdict will be for the defendant.''

That part of instruction (e) objected to is the language used relating to the bell boy who drove and wrecked the car, of whom it is said, he ''had neither real nor apparent authority to take charge of said car and drive the same, unless you further find from the evidence that the clerk directed said bell boy to take charge of said car.'' It will be noticed that instructions Nos. 4 and 5 are in effect the same as instruction (e), and it is argued that the language complained of disregarded the allegations of the complaint, which allegations based the right of recovery ''upon the conduct of other servants of the hotel,'' and refers to that paragraph of the complaint which, after alleging with particularity the alleged special agreement, continues as follows: ''In addition, said plaintiffs allege that defendant, through its servants, officers, clerk and employees, assumed and took upon itself the duty and obligation to store said automobile in a safe garage nearby.'' The answer to this contention is that this allegation was but a mere statement in general terms of what had already been particularly alleged, and this is the way in which it was interpreted by the appellants themselves, as the instruction they asked grounds the case solely on the special agreement. It is argued as to these instructions that they erroneously declare as a matter of law that the bell boy was without authority, real or apparent, to store the car, in the absence of instruction to do so from the clerk. This, in effect, is what the appellants themselves requested the court to tell the jury. Instruction No. 1 assumes that the authority of the bell boy was derived from the language and conduct of the clerk in his conversation with Judge Andrews. Therefore, the true effect of these instructions is but to state

990

the converse of the instruction requested by the appellants. *Western Union Tel. Co.* v. *Cowardin,* 113 Ark. 160, 168 S. W. 1133; *Pine Bluff S. & S. Ry. Co.* v. *Leatherwood,* 117 Ark. 524, 175 S. W. 1184.

It is next insisted that the court wrongfully placed the burden of proof upon the plaintiffs by instruction "G." The appellants base their argument upon the erroneous assumption that, under the facts as proved the innkeeper was the insurer of the automobile under the rule announced in *Pettit* v. *Thomas, supra,* whereas, as we have seen, the liability, if any, is based upon a special agreement which, if established, would create no greater responsibility than that of a bailee for hire, and the instruction correctly placed the burden of proof. *Bertig* v. *Norman,* 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D, 943; *Union Compress Co.* v. *Nunnally,* 67 Ark. 284, 54 S. W. 872; *Turner* v. *Weitzel, supra.*

The scope of this court's inquiry must be limited to the case tried in the court below. There the case, as we have seen, was whether or not there was an agreement as pleaded and as expressed in the instruction given at the request of the appellants. The theory now contended for is different and may not be allowed. *White County* v. *Bragg,* 168 Ark. 670, 273 S. W. 7; *American Ry. Express Co.* v. *Cole,* 183 Ark. 557, 37 S. W. (2d) 699.

It follows from what we have said that the judgment of the trial court is in all things correct, and it must therefore be affirmed. It is so ordered.

KIRBY, J., dissents.