105 N.J. Super. 203 (1969)
251 A.2d 480
JOSEPH KUSHNER, PLAINTIFF,
v.
PRESIDENT OF ATLANTIC CITY, INC., A NEW JERSEY CORPORATION, t/a the PRESIDENT HOTEL, DEFENDANT.
Superior Court of New Jersey, Atlantic County Court, Law Division.
Decided March 27, 1969.
*206 Messrs. Perskie and Neustadter, attorneys for plaintiff (Mr. Robert Neustadter on the brief).
Messrs. DeBrier and Wallen, attorneys for defendant (Mr. Daniel DeBrier on the brief).
RIMM, J.C.C.
This is an action by plaintiff to recover the sum of $6,000, the agreed value of plaintiff's automobile, *207 which was not delivered to plaintiff upon demand after storage with defendant.
The parties have submitted this matter to the court without a jury upon an agreed stipulation of facts, which are as follows:
(1) Defendant is a New Jersey corporation which, during July 1967, was the owner and operator of certain motel premises known as the President Motel, located at Albany Avenue and the Boardwalk, Atlantic City, New Jersey.
(2) Defendant, in consideration of a stipend or fee paid to it, furnished lodgings, food, rooms and other accommodations to transients and travelers.
(3) On July 7, 1967 plaintiff, in consideration of a sum of money paid by him to defendant, requested of it a room in its premises, and on said date was accepted by defendant as a transient or guest in its motel premises.
(4) Plaintiff used as a means of transportation to defendant's motel a 1967 Cadillac sedan automobile. Upon arrival at the motel and upon being accepted by defendant as a guest, left his automobile, together with the keys permitting the operation thereof, with an employee and received as a receipt therefor a check or ticket.
(5) The automobile was then left with an employee of the defendant as aforesaid, parked or garaged by defendant, its servant or employee in the parking area of the motel.
(6) The parking area for guests of defendant in July 1967 was the ground level of its motel building. The area was surrounded by the structure on three sides, the only open portion thereof being the side abutting on Albany Avenue, from which access is made to the area. There was space for approximately 200 automobiles. The automobiles were parked in rows, in such manner that there were normally four aisles affording ingress and egress to and from Albany Avenue.
(7) Most of the guests' cars were parked by attendants, although guests who infrequently requested to park their own automobiles were permitted to do so. Whenever a guest *208 submitted his vehicle for parking he was issued a receipt, and before a guest's vehicle was returned to him he was required to produce and surrender that receipt.
(8) There was always at least one attendant on duty at the parking area throughout the night. During the day there were two to four attendants. Each midnight the attendant on duty parked and locked a car at the street end of each of the above-mentioned aisles in such manner as to block all exits from the area. The exits were kept blocked in that fashion until 8 A.M., unless it became necessary to move one of the locked cars in order to permit a guest's car to enter or leave the parking area.
(9) Defendant alleges that its parking area was well illuminated at night, that its attendants patrolled the parking area continuously so as to maintain surveillance of the vehicles parked therein, and that the attendants were supervised by the manager of the parking area and also by the desk clerk, the general manager and such other supervisory personnel as were on duty in or about the motel from time to time, all of which is denied by plaintiff.
(10) The parking facilities were furnished to plaintiff at no extra charge and as an accommodation to him.
(11) On July 8, 1967, when plaintiff requested the redelivery of his automobile, it could not be found, nor has it been found since. Neither of the parties has any knowledge or information as to what became of the vehicle.
(12) The agreed value of plaintiff's loss herein is $6,000.
(13) It is plaintiff's contention that he is entitled to recover of defendant the full amount of the agreed value of his automobile, to wit; $6,000. It is defendant's contention that plaintiff is not entitled to recover from defendant or, if plaintiff is entitled to recover, he is limited to a sum not exceeding $100, as provided for in R.S. 29:2-3.
The matter herein is therefore limited to three questions: (1) Is an automobile included within the purview of R.S. 29:2-3? (2) should the complaint be dismissed because *209 fault or negligence has not been established? (3) If plaintiff is entitled to recover, are his damages limited to $100?

I
The first clause of R.S. 29:2-3 reads as follows:
"No proprietor of any hotel shall be liable in any sum to any guest in such hotel for the loss of wearing apparel, goods, merchandise or other personal property not mentioned in section 29:2-2 of this title, where it shall appear that such loss occurred without the fault or negligence of such proprietor, * * *"[1]
In construing the above clause it is noted that generally, absent a limiting statute, an innkeeper's liability extends to all property customarily and ordinarily brought by a guest and received infra hospitium causa hospitandi, i.e., "such property as the guest has with him for the purposes of his journey and as is necessarily incident to travel." 40 Am. Jur.2d, Hotels, Motels & Restaurants § 131, p. 1004; 43 C.J.S., Innkeepers § 16, p. 1157. The rule of absolute liability of innkeepers in England prior to the enactment of limiting statutes was applied to means of conveyance, provided those were brought to and left by the guest at the inn. Bradley Livery Co. v. Snook, 66 N.J.L. 654 (E. & A. 1901). The automobile was a means of conveyance and a necessary incident of travel for a guest in 1906 and the court, prior to 1907 (the enactment date of R.S. 29:2-3, L. 1907, c. 183, par. 4, p. 430; C.S., p. 3135, par. 47) would have extended an innkeeper's absolute liability *210 to an automobile brought to and entrusted to the innkeeper by the guest. Although no New Jersey reference can be found dealing with the identical problem here, prior to the effective date of the statute the court in Bradley Livery Co., supra, indicated that the innkeeper's liability would be absolute for the delivery to and storage by the guest of a means of conveyance, namely, a team of horses and a wagon. The Innkeepers' Act, R.S. 29:2-1 et seq., as amended, is in derogation of the common law and must therefore be strictly construed. North Rivers Ins. Co. v. Tisch Management, Inc., 64 N.J. Super. 357 (App. Div. 1960).
Accordingly, the Legislature clearly intended to limit or replace the prior existing absolute liability for those personal articles of a guest of an inn customarily and ordinarily brought by the guest to the inn, and it would therefore be unreasonable to construe R.S. 29:2-3 to exclude the loss of an article of personal property usually brought by a guest, such as an automobile. Nor does the rule of ejusdem generis apply to the above clause. That rule provides that when specific words of the same class are used in conjunction with a general word, the general word may be limited to that class. General Roofing Co. v. Borough of Belmar, 77 N.J. Super. 469 (App. Div. 1962).
The terms "goods" and "merchandise" in the statute have a much wider extension and different meaning than the term "wearing apparel." Moreover, while the term "goods" is within the meaning of "merchandise," the term "goods" has a wider meaning. See 18A Words & Phrases, p. 171 (1956). The use of both words in the statute ("goods" and "merchandise") evinces a legislative intent to give wider scope to the term "goods." See Sperry and Hutchinson Co. v. Margetts, 15 N.J. 203 (1954). Therefore, the words were not intended to operate as specific words of the same class and ejusdem generis is not applicable.
Further, as noted above, since the automobile was a means of conveyance in 1907 when the statute was adopted, and was a necessary incident of travel, the Legislature must have intended to include automobiles within the purview *211 of the Innkeepers' Act quoted above. See, also, 82 C.J.S. Statutes § 319, p. 558 et seq. Automobiles are within the purview of "conveyance," so that the Innkeepers' Act would subsequently apply to them even assuming the Legislature had no knowledge of the automobile's use in 1907.

II
As to establishing negligence, the question arises whether R.S. 29:2-3 affords a guest the benefit of bailor-bailee "procedural presumption" of negligence where he entrusts to an innkeeper an automobile which subsequently disappears.
As indicated above, the first clause of R.S. 29:2-3 exempts a hotel proprietor from liability for loss of certain articles of personal property of a guest where it appears that the loss occurred without the fault or negligence of such proprietor. Defendant contends that the statute does not create any presumption of negligence in favor of plaintiff, procedurally or otherwise, as a plaintiff would ordinarily have in a bailment for hire arrangement. While it is true that the statute does not expressly state that there is a presumption, nevertheless, such presumption was contemplated and intended by the Legislature on the basis of bailor-bailee relationship. The intention of the statute was to abrogate an innkeeper's absolute liability for personal property ordinarily and customarily brought to the inn by a guest, and it obviously did not intend to place the innkeeper in a more favorable position than any other common law bailees of automobiles, such as parking lot operators.
Where a parking lot operator or garage keeper knowingly accepts possession and control of an automobile, and particularly where the owner of said automobile surrenders the keys to the garage keeper or his agent, a relationship of bailor-bailee is created. Leonard v. Auto Parks, Inc., 12 N.J. Super. 113 (App. Div. 1951); Parnell *212 v. Rohrer Chevrolet Co., 95 N.J. Super. 471 (App. Div. 1967); Rodgers v. Reid Oldsmobile, Inc., 58 N.J. Super. 375 (App. Div. 1959); Rauber v. Zinner, 125 N.J.L. 85 (Sup. Ct. 1940); McBride v. DeCozen Motor Co., 5 N.J. Misc. 552, 137 A. 558 (Sup. Ct. 1927) 7 A.L.R.3d 934. Upon showing delivery by a bailor and damage to or failure to return the automobile while in the possession of the bailee there arises a procedural presumption of negligence requiring the bailee to come forward with evidence to show that the loss or damage occurred by reason of a cause other than its negligence, or if it cannot prove loss by reason of such cause, that it exercised due care. Rodgers, supra.
It is clear from the stipulated facts that a bailment for hire was created when plaintiff delivered his automobile to an agent or employee of defendant. The issue, therefore, remains to be resolved whether this statute denies plaintiff the benefit of a procedural presumption. This benefit should not be denied.
Generally, innkeepers are liable as insurers of goods of their guests, or only for negligence, and proof that the goods of the guests have been lost or injured establishes a prima facie case of liability and casts upon the innkeeper the burden of establishing such facts as will exonerate him. 43 C.J.S. Innkeepers § 21, p. 1171; Parnell v. Rohrer Chevrolet Co., supra. The bailment presumption is based primarily upon the policy consideration that the possessor of the goods at the time of the loss or damage is in a better position to explain the circumstances. Usually, one who returns to a parking lot and finds that his vehicle has vanished is at a loss to point to the particular breach of duty by the parking lot operator that permitted the loss to occur. 7 A.L.R.3d 927, 934. No authorities have been found in New Jersey which interpret the applicable clause of the statute to the contrary. The general policy consideration mentioned above should and will apply in that plaintiff shall have the benefit of a procedural presumption *213 of negligence upon proof that the automobile was entrusted to defendant and subsequently lost or stolen while in its possession. The procedural presumption of negligence arises upon such proof by plaintiff-bailor of the bailment and that the automobile was not returned to him by defendant-bailee. Upon submitting such proof, a prima facie case has been established and it is thereupon incumbent upon defendant-bailee to come forward with proof to meet the presumption of negligence of defendant-bailee. Rodgers v. Reid Oldsmobile, supra, indicates that defendant must meet or rebut the procedural presumption by coming forward with evidence to show that the loss or damage occurred by reason of a cause other than its negligence, or if it cannot do that, to show that it exercised due care.
The stipulation of facts does not indicate any evidence to prove the cause for the loss. Thus, the crucial issue posed is whether the stipulation of facts supports a conclusion that defendant was not negligent or did in fact exercise due care.
Defendant argues that the stipulated facts relating to the precautions taken by it against the theft from its parking lot, such as blocking the exits at night, employment of one or two men on duty each night, illuminating the parking area, refusal to return a car without first receiving the receipt, and constant surveillance of the parking lot, are sufficient to establish that due care was exercised to protect against the loss of a guest's car. However, this contention may be argued with relation to the precautions taken between midnight and 8 A.M., but there is little, if any, proof of precautions taken against theft during the remainder of the day. This failure of proof is apparent because of defendant's lack of knowledge of the exact time when the loss of plaintiff's automobile occurred. Defendant's answers to plaintiff's interrogatories state that the automobile was stolen sometime between 11:45 P.M. on July 7, 1967, and 11:30 A.M. on July 8, 1967. Thus, it is probable that the car was taken during that period of time when the nighttime precautions were not in effect. The issue of due care cannot be determined *214 on the basis of precautions which might not have been in effect at the time of the loss, because such proof is lacking.
With respect to the proof of the daytime precautions, the facts stipulated show merely that defendant had two and four employees on duty at all times and that no car was returned without the guest's surrender of his receipt. The court cannot find from these facts that the defendant exercised due care. In totality, the facts stipulated are in terms of precautions usually or customarily taken, and not as to facts concerning the precautions actually taken during the period of the loss. There is no proof establishing how many men were actually working on the night and day in question, the nature and extent of their duties, and their respective work areas in the parking lot. Such additional evidence could have materially assisted the court, sitting as a jury in this instance, in giving meaning to the phrase "on duty" used in the stipulation of facts. In the absence of such proof the court would be compelled to conjecture as to the effect of being "on duty" as used in the stipulation. Such proof is critical to the defendant's contention because proof is lacking indicating that the parking area was under actual supervision by some employees during some period of time while the car was on the lot.
In evaluating all of the proof from the stipulation of facts this court should take notice of and consider the general rule, although not adopted in this case or in any reported decision in New Jersey, that a high degree of care is required where the keys are customarily left in the car because the car may be more readily stolen. Kaiser v. Poche, 194 So. 464 (La. App. 1940). The stipulation states that the automobile was left "together with the keys permitting the operation thereof, with an employee and [plaintiff] received as a receipt therefor a check or ticket." The court should take into consideration, when making a factual finding as to whether due care has been exercised under the circumstances, the fact that defendant had control of the car with the *215 keys. Thus, in some situations certain precautions would be sufficient when keys are not left in the car which may otherwise constitute lack of due care when the keys are left in the car with a bailee.
In the present posture of the stipulated facts the court finds that defendant has not rebutted or overcome the procedural presumption of negligence, and therefore there is insufficient evidence to establish that the "loss occurred without the fault or negligence of such proprietor," defendant-bailee.

III
Defendant contends that the second clause of R.S. 29:2-3 limits plaintiff's recovery to a sum not exceeding $100. The clause reads as follows:
"* * * nor shall any such proprietor be liable in any sum for the loss of any article or articles of wearing apparel, cane, umbrella, satchel, valise, bag, box, bundle or other chattel belonging to such guest, the same not being in a room or rooms assigned to such guest, unless the same shall be specially intrusted to the care and custody of such proprietor or his duly authorized agent, and if such property shall be so specially intrusted, the proprietor shall not be liable for the loss of the same in any sum exceeding one hundred dollars."
Defendant contends that the word "chattel" was intended to cover all kinds of property, including an automobile, and therefore defendant hotel is only liable, if at all, to a sum not exceeding $100. The court does not agree. Any interpretation which would favor the innkeeper or other bailees of a means of conveyance would not be within the intendment of the Legislature, which only sought the abrogation of the absolute liability for loss of a guest's personal property, infra hospitium causa hospitandi. Moreover, the rule of ejusdem generis would mitigate against the asserted interpretation made by defendant. The list of articles in the second clause of R.S. 29:2-3, other than the term "chattel," is specific in scope, i.e., "articles of wearing apparel, cane, *216 umbrella, satchel, valise, bag, box, bundle, or other chattel belonging to such guest, the same not being in a room or rooms assigned to such guest * * *" Ejusdem generis may be applied to general words in conjunction with words of specific meaning to limit them to the class expressly mentioned. General Roofing Co. v. Borough of Belmar, supra. The list of articles in the second clause of R.S. 29:2-3, other than the term "chattel," is specific in scope and is apparently descriptive of the general class "baggage" or "luggage," i.e., articles of personal use, convenience, instruction or amusement. See 40 Am. Jur.2d, Hotels, Motels & Restaurants, § 133, p. 1005; Cedar Rapids Inv. Co. v. Commodore Hotel Co., 205 Iowa 736, 218 N.W. 510, 56 A.L.R. 1098 (Sup. Ct. 1928). (automobile not within term "baggage" under innkeeper lien statute). The general term "chattel," therefore, should be confined to those articles of personal use, convenience, instruction or amusement which the ordinary innkeeper and traveler at a hotel in 1907 would have regarded as baggage or luggage of the guest and which it was customary or reasonable to expect a guest to consign or keep within the room assigned to him by the innkeeper. Obviously, an automobile could not meet this test.
N.J.S. 2A:44-50 was not referred to by either party and the court notes that this statute is similar in wording and purport to R.S. 29:2-3. N.J.S. 2A:44-50 employs, after an enumeration of specific items for which the innkeeper's liability might be limited to $100, the word "property" rather than "chattel," but that does not in the court's opinion, warrant a different result. Moreover, N.J.S. 2A: 44-50 appears in a subtitle under "Liens" in the Revised Statutes, beginning with N.J.S. 2A:44-1 through 2A:44-186, whereas N.J.S.A. 29:2-3 is under the title "Hotels."
The amount of the loss is stipulated at $6,000. Plaintiff may submit an order for judgment against the defendant in the sum stated, consented to as to form by defendant.
NOTES
[1] N.J.S.A. 29:2-2 states that whenever the proprietor of a hotel provides a safe or other depository * * * for safekeeping of "any money, jewels, furs, banknotes, precious stones, railroad tickets, ornaments, or negotiable or valuable papers belonging to guests in such hotel" and a notice stating the fact that such safe is available, if any guest neglects to deliver any of the stated items to the person in charge of the safe then the hotel shall not be liable for the loss of any such items. If the guest does deliver any such items to the person in charge of the safe in the hotel, the hotel proprietor shall not be liable for loss exceeding $500 unless by special agreement.